IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THE STATE OF OREGON by and through
the OREGON STATE TREASURER on
behalf of the OREGON PUBLIC EMPLOYEE
RETIREMENT FUND,
         Plaintiff,

v.

MERCK & CO., INC., RAYMOND V.
GILMARTIN, JUDY C. LEWENT, ALISE S.
REICIN, KENNETH C. FRAIZER, EDWARD
M. SCOLNICK, RICHARD C. HENRIQUES,
MARY M. MCDONALD, and PETER S. KIM,
         Defendants.

CV. 05-1463-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff filed this action in State court alleging violations of Oregon Securities Law,

O.R.S. § 59.137 *et seq*. Defendants removed the case to this court, claiming that it has diversity

jurisdiction under 28 U.S.C. § 1332. Plaintiff has now moved to remand the case back to State

court, pursuant to 28 U.S.C. § 1447, alleging that diversity is lacking and this court is without

Page 1 - FINDINGS AND RECOMMENDATION

jurisdiction. For the reasons that follow, Plaintiff's Motion to Remand (No. 4) should be granted.

## PROCEDURAL BACKGROUND

Plaintiff State of Oregon, by and through the State Treasurer and on behalf of the Oregon Public Employee Retirement Fund (OPERF), filed its complaint on August 16, 2005, in the Circuit Court for the State of Oregon, County of Multnomah, alleging claims against Defendants based solely on violations of the Oregon Securities Law, O.R.S. § 59.137 *et seq*. Plaintiff alleges that Defendants made material representations and omitted material facts that resulted in significant damages to OPERF, which had purchased over 1.2 million shares of Merck common stock.

Defendants, Merck & Co., Inc., and several of its top officers and directors, filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 on September 22, 2005, claiming that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of costs and interest, and involves a claim between citizens of different states. All Defendants are citizens of states other than Oregon. Defendants claim that while the State of Oregon is nominally a party to this action, the real party in interest is OPERF, and OPERF is a separate entity from and citizen of the State of Oregon.

On October 5, 2005, Plaintiff filed a Motion to Remand. Plaintiff claims the parties are not diverse because OPERF is not the real party in interest, but is an "arm of the State," and thus not a citizen of the State of Oregon.

Oral argument on the Motion to Remand was held on November 9, 2005.[1] The parties

---

[1] On October 17, 2005, the Judicial Panel on Multidistrict Litigation (MDL Panel) issued a Conditional Transfer Order transferring this action to the Honorable Stanley R. Chesley, District Judge for the District of New Jersey, along with 19 other cases involving common

agree that if OPERF is not the real party in interest but is simply an arm of the State, remand is appropriate because this court would not have jurisdiction under the diversity statute. If, on the other hand, OPERF is the real party in interest and thus an entity separate from the State, it would be a citizen for diversity purposes and the Motion for Remand should be denied.

## LEGAL STANDARD

In addressing a motion to remand, the court looks to whether the case was properly removed to federal court in the first instance. Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1426 (9th Cir. 1984). Only cases that would have had original jurisdiction in a federal district court may be removed from State court:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

---

questions of fact. On October 31, 2005, Plaintiff filed a timely Notice of Opposition to Conditional Transfer Order, objecting to the transfer. According to counsel for Plaintiff, consideration of the Motion to Transfer is currently scheduled for consideration by the MDL Panel without oral argument on January 26, 2006. As an initial matter, therefore, this court must decide whether or not to address this motion on the merits. The parties agree that the court may either decide the Motion to Remand or defer handling of the motion to the MDL Panel. Based on the merits of the parties' arguments, it appears to the court that the jurisdictional issues are factually and legally difficult. However, there do not appear to be any similar issues raised in other cases that have been transferred by the MDL Panel. Further, because determination of this Motion to Remand requires the court to analyze Oregon statutes and Oregon State court decisions, this court is in a better position to make the necessary analysis. Accordingly, the court will rule on the motion at this time rather than defer to the MDL Panel. See Chinn v. Belfer, 2002 WL 31474189 (D. Or. 2002) (adopting framework for dealing with a motion to remand and a competing motion to stay pending a decision by the MDL Panel on a Conditional Transfer Order).

28 U.S.C. § 1441(a). The defendants have the burden of demonstrating that removal is appropriate by a preponderance of the evidence. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002); Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

## FACTUAL BACKGROUND

The Oregon Public Employee Retirement System (OPERS) is a statewide defined benefit retirement plan that was established by the Oregon legislature for the benefit of State and other public employees. OPERS is entirely a creature of statute. O.R.S. § 238.005 et seq. It is managed by State officials who are either elected, such as the State Treasurer, or appointed by the Governor and confirmed by the Senate. The Oregon legislature sets the budget for the management of OPERS. (Decl. of Assistant Attorney General Frederick Boss.)

The Oregon Public Employee Retirement Fund (OPERF) is the trust fund under OPERS, out of which beneficiaries are paid retirement benefits. O.R.S. § 238.660(1). All OPERF monies are deposited with the State Treasurer, who serves as the custodian of the OPERF. O.R.S. § 238.660(5). OPERF is separate and distinct from the State's General Fund. O.R.S. § 238.660(1); Oregon State Police Officers' Assn. v. State, 323 Or. 356, 363 n. 9 (1996) (citing O.R.S. § 237.271 and Sprague v. Straub, 252 Or. 507, 521-22 (1969)). OPERF is funded from three primary sources: (1) employee contributions; (2) employer contributions; and (3) earnings from the investment of those funds. Oregon State Police Officers' Assn., 323 Or. at 363 n. 9. OPERF currently holds about $50 billion in assets.

OPERS is administered by the trustee Oregon Public Employees' Retirement Board (OPERB). Oregon State Police Officers' Ass'n, 323 Or. at 363 n. 9; O.R.S. § 238.660(1). OPERB members are appointed by the Governor, O.R.S. § 238.630, and, as members of a "state

board or commission," receive statutorily defined compensation. O.R.S. § 238.640(7); O.R.S. § 292.495. In 2003 the Oregon Legislature reduced the number of OPERB members from twelve to five. OPERB maintains a Capital Preservation Reserve Fund (CPR Fund) with assets of approximately $300 million. The purpose of the CPR fund is to cover underperforming investments and other revenue shortfalls relating to OPERF investments.

OPERS assets are invested by the Oregon Investment Council (OIC). O.R.S. § 293.726. The OIC is comprised of five members: the Treasurer and four other members who are appointed by the Governor. O.R.S. § 293.706. OIC members also receive statutorily defined compensation. O.R.S. § 293.711; O.R.S. § 292.495.

Oregon statutes direct the manner in which public employers contribute funds into OPERF. O.R.S. § 238.225(1). OPERB must hold State employers, and other employers that opt into the system, accountable for their representative portion of the fund. Id. As the largest contributor, the State of Oregon is responsible for the largest portion of those funds. Depending on the liabilities of OPERF, OPERB may increase or decrease the amount that State employers pay into the fund. Id.

ANALYSIS

Diversity Jurisdiction

It is well settled that a State is not a citizen of itself and, therefore, cannot sue or be sued in a diversity action. Moor v. Alameda County, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of diversity jurisdiction."). Plaintiff argues that the Treasurer is acting as the State government in bringing this action, and therefore is not subject to diversity jurisdiction. Defendants argue that OPERF is the proper party to this action, and that

OPERF is a citizen of Oregon and subject to diversity jurisdiction.

A. Real Party in Interest

Defendants argue that OPERF is the real party in interest to this litigation and that

Plaintiff has artificially inserted the State Treasurer as nominal plaintiff based on O.R.S. §

293.751(3).[2] Defendants question whether the State Treasurer is statutorily authorized to bring

suit on behalf of OPERF, and suggests that only OPERB has the power to file suit on behalf of

OPERF. See O.R.S. § 236.630(2).[3] This court need not resolve the question of authorization to

_____

[2]O.R.S. § 293.751(3) provides,

> (3) In the event of default in the payment of principal or interest or
> other income of any investment of the investment funds, the
> investment officer, with the approval of the Oregon Investment
> Council, may:
>> (a) Institute the proper proceedings to collect the matured
>> principal or interest or other income.
>>
>> (b) Accept for exchange purposes refunding bonds or other
>> evidences of indebtedness at interest rates to be agreed
>> upon by the investment officer and obligor.
>>
>> (c) Make compromises, adjustments or disposition of the
>> matured principal or interest or other income as the
>> investment officer considers advisable for the purpose of
>> protecting the moneys invested.
>>
>> (d) Make compromises or adjustments as to future
>> payments of principal or interest or other income as the
>> investment officer considers advisable for the purposes of
>> protecting the moneys invested.

[3]O.R.S. § 236.630(2) provides,

> (2) [OPERB] shall have:
>> (a) The powers and privileges of a corporation, including
> the right to sue and be sued in its own name as such board; * * * *.

sue, because it concludes, as discussed below, that OPERF is an arm of the State whether the

State Treasurer or OPERB brings suit in its behalf.

### B. Arm of the State

It is immaterial whether the State engages in activities in its own name or through an

'arm' or 'alter ego.' For the purpose of diversity jurisdiction, the determinative factor is whether

this litigation amounts to anything more than an action by the State of Oregon. DeLong Corp. v.

Oregon State Highway Commission, 233 F. Supp. 7, 10 (D. Or. 1964), aff'd, 343 F.2d 911 (9th

Cir. 1965). In other words, the court must determine whether OPERF, on whose behalf the State

has brought this action, is an arm of the State.

The parties agree that the test for determining whether an entity is an arm or alter ego of

the State and, therefore, not subject to diversity jurisdiction, is virtually identical to that applied

for determining State immunity under the Eleventh Amendment.[4] The parties disagree, however,

as to which set of factors should be considered under the Eleventh Amendment analysis.

Plaintiff argues for application of the nine factors set forth in State ex rel. Roberts v.

Mushroom King, Inc., 77 B.R. 813 (D. Or. 1987), where the court was asked to determine

whether it could exercise diversity jurisdiction over the Oregon Commissioner of Labor, which

the State contended was an arm of the State. Those nine factors were:

---

[4] The Eleventh Amendment is not implicated directly in this case because the Ninth Circuit has held that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir. 2004). Nonetheless, since there are significantly more Eleventh Amendment cases dealing with the test for determining whether an entity is an arm of the State and they are generally more profuse than those analyzing the test for diversity purpose, the court will look to those cases to determine whether OPERF is an arm of the State of Oregon.

1.      whether the relief sought is that which inures to the State alone and whether the judgment or decree, if in favor of the State, would effectively operate in favor of the State;

2.      whether State law requires that the action be brought in the name of the State;

3.      whether the action will affect the State treasury;

4.      whether the State agency is performing a governmental or proprietary function;

5.      whether the agency is separately incorporated;

6.      the degree of autonomy of the agency;

7.      whether the agency has the power to sue and be sued and to enter into contracts;

8.      whether the agency is immune from State taxation; and

9.      whether the State has immunized itself from responsibility for the agency's acts.

Id. at 816.  Plaintiff then maintains that while those factors should guide the court's analysis, the baseline inquiry is a "functional" one that requires the court to broadly consider the statutory scheme and the role the State plays in the operation of the system.

Defendants argue that the Ninth Circuit has consistently applied a five factor test set forth in Mitchell v. Los Angeles Community College Dist., 861 F.2d 198 (9th Cir. 1988), to determine whether an entity is an arm of the State for purposes of Eleventh Amendment analysis.  The Mitchell factors are as follows:

1.      whether a money judgment would be satisfied out of State funds;

2.      whether the entity performs central governmental functions;

3.      whether the entity may sue or be sued;

4.      whether the entity has the power to take property in its own name or only the

name of the State; and

5.    the corporate status of the entity.

Id. at 201 (citing Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982). "To determine these factors, the court looks to the way State law treats the entity." Id.

The court agrees with Defendants that the Ninth Circuit has consistently applied the Mitchell factors in analyzing whether an entity is an arm of the State for purposes of Eleventh Amendment immunity. The court finds, however, that the factors set forth in Mitchell and Mushroom King are essentially striving to the same end: that is, a determination of whether the entity is so inextricably bound to and controlled by the State that it is the State's alter ego and, thus, afforded Eleventh Amendment immunity. Moreover, the court agrees with Plaintiff that the analysis requires the court to broadly consider the statutory scheme creating OPERS and OPERF. DeLong Corp., 233 F. Supp at 10 ("[T]he court must closely analyze, not only the legislation which created the [entity], but also legislation, subsequently enacted, touching on the powers and duties of said [entity]"). With that in mind, the court will apply the five Mitchell factors, but will refrain from a mere mechanical counting of checks in the "pro" or "con" columns, and instead will use the Mitchell factors as a starting point to look broadly to the overarching scheme established by the Oregon legislature for the creation and management of the retirement system.

No Ninth Circuit case has addressed the question of whether a similar State retirement program is an arm of the State. Defendants argue, however, that this issue has already been addressed and decided by a Multnomah County court in Or. Pub. Employe[e]'s Ret. Bd. v. Simat, Hellisen & Eichner, Mult. Co. Case No. 9610-8259. In Simat, the State of Oregon sought recovery in tort and contract on behalf of OPERF. The case stemmed from the use of OPERF

funds to guarantee a bond for a construction project at the Portland International Airport. The

defendant in that case also argued that the State was not the real party in interest. On an

O.R.C.P. 21 Motion to Dismiss, the district court made the following Findings of Fact and

Conclusions of Law:

> 1. The Court finds that [OPERB] on behalf of [OPERF] is the real party in interest for purposes of this lawsuit;
> 2. The Court further finds that [OPERB] is the trustee for [OPERF] and has authority to bring the present lawsuit;
> 3. The Court further finds that the Oregon Department of Treasury (Treasury) is not a trustee of [OPERF], but is the custodian of [OPERF] funds and has fiduciary obligations to [OPERF]; and
> 4. The Court finds that the State of Oregon has no proprietary interest in [OPERF], and therefore no monetary interest in [OPERF].

While it is true that a federal district court should look to State law in analyzing the

character of OPERF, see DeLong Corp., 233 F. Supp. at 10,[5] this court finds the Simat order of

limited value as applied to the present case. First, the order is a county trial court decision, not a

decision by the Oregon Supreme Court or the Oregon Court of Appeals. Second, the Simat order

---

[5]In DeLong Corp. v. Oregon State Highway Commission, 233 F. Supp. 7 (D. Or. 1964), aff'd, 343 F.2d 911 (9th Cir. 1965), the court noted that State law should be considered in the analysis, but that ultimately the question is one for the federal courts to decide:

> In making this determination, the federal courts will be influenced by state decisions, dealing with the character and status of state agencies, but ultimately the question is one which the federal courts must answer. In order to arrive at an intelligent conclusion, the court must closely analyze, not only the legislation which created the [entity], but also legislation, subsequently enacted, touching on the powers and duties of said [entity].

Id. at 10.

does not include any analysis or explanation. Third, while the <u>Simat</u> findings summarily conclude that OPERB on behalf of OPERF is the real party in interest, they do not address, much less analyze, whether OPERB and OPERF are arms of the State. The court is therefore unable to determine whether the findings of fact should be applied to any lawsuit beyond the lawsuit that was then before the Multnomah County trial court.

Finding that the <u>Simat</u> Order does not control the analysis, the court moves onto consideration of the <u>Mitchell</u> factors.

### 1. Impact on State Funds

Under the first <u>Mitchell</u> factor, the court must consider whether the State would bear a legal obligation to satisfy a judgment against OPERF, or whether any money withdrawn from OPERF to satisfy a judgment would necessarily be replaced with State funds. <u>Holtz v. Nenana City Pub. Sch. Dist.</u>, 347 F.3d 1176, 1184 (9th Cir. 2003) (citing <u>Eason v. Clark County Sch. Dist.</u>, 303 F.3d 1137, 1143 (9th Cir. 2002)).

The parties agree that this factor is considered by the Ninth Circuit to be the most important factor in the Eleventh Amendment analysis. The parties disagree, however, on how the factor should be applied. Defendants argue that there must be a direct financial impact on the State Treasury in this case. In other words, there is no impact on State funds unless the State of Oregon would be liable for a judgment against OPERF or the State would be required to increase its contributions to OPERF to cover a shortfall resulting from the loss of value in Merck common stock in this case. Here, Defendants argue, OPERF has adequate assets and a rainy day fund that could be used to cover the alleged shortfall, which, Defendants point out, amounts to less than 1% of OPERF's total assets. Plaintiff, on the other hand, argues that the practical effect in this

case is irrelevant. Rather, the court must consider the impact of a hypothetical judgment on OPERF's assets. If a substantial judgment were entered against OPERF, Plaintiff argues, the State would have an obligation to replenish the fund through increased contributions.

The court agrees that this factor should not rest on the practical impact in a particular case,[6] but instead focus on the ultimate financial responsibility running from the State to OPERF. Were the court to consider the impact on State funds on a case by case basis, the arm of the State analysis could turn on the extent of liability in a given case and lead to the anomalous result that OPERF would be an arm of the State in some cases and not in others. As the Supreme Court, in Regents of the Univ. of California v. Doe, 519 U.S. 425 (1997), explains, the proper inquiry is not whether the State treasury would be liable in this case, but whether, hypothetically speaking, the State treasury would be subject to "potential legal liability" if the retirement fund did not have the money to cover a judgement. Id. at 431.

In Doe, the Ninth circuit concluded that the Regents of the University of California was not an arm of the State because the Federal Government had agreed to indemnify it for liability arising out of the lawsuit. Id. at 427-28. The Supreme Court disagreed. Justice Stevens wrote that the Ninth Circuit's approach mistakenly "convert[ed] the inquiry into a formalistic question of ultimate financial liability." Id. at 431. To illustrate the problem with the Ninth Circuit's reasoning, the Court set forth the following analogy: "Surely, if the sovereign State of California should buy insurance to protect itself against potential tort liability to pedestrians stumbling on

---

[6] The court notes that in the Eleventh Amendment cases, the entity claiming to be an arm of the State is typically a defendant seeking immunity from a potential money judgment. Here, as in most diversity cases, the entity claiming to be an arm of the State is the plaintiff and is making a claim for damages that, if successful, would replenish the retirement fund and potentially decrease the State's future contributions.

the steps of the State capitol, it would not cease to be one of the United States." Id.

The analysis in Doe is fully applicable here. It is not the State of Oregon's direct liability on a judgement against OPERF that determines whether the latter is an arm of the State, but the potential legal liability of the State of Oregon if OPERF did not have the money to cover a judgement. The court must therefore identify the financial obligation running from the State to OPERF, and determine whether the State treasury might be impacted by a hypothetical judgment against OPERF.

Plaintiffs do not argue that the State would be directly liable for a judgment against OPERF. Rather, Plaintiffs argue that a judgment against OPERF would impact the State because money withdrawn from OPERF to satisfy a judgment would necessarily impact State funds in the form of increased contributions. Defendants argue that OPERF is financially insular, and that any impact on the State would be indirect and in the State's role as an employer. In fact, Defendants argue, an Oregon Supreme Court case has held that the legislature would have no legal obligation to cover investment losses. In Sprague, a declaratory judgment suit brought to test the validity of a statute granting OIC the ability to hire outside money managers to purchase common stock. 252 Or. 507. The court held that the Treasurer holds OPERF assets as a custodian only and that the State has no proprietary interest in the funds that would prohibit OPERF from being invested in common stock. Id. at 525. Defendants argue that a holding by this court that a judgment against OPERF would affect the State treasury would be inconsistent with Sprague. The court disagrees. The court recognizes that OPERF was created to be financially insular and that State has no proprietary interest in the fund. The court is not convinced, however, that whether or not the State holds a proprietary interest in the fund is

Page 13 - FINDINGS AND RECOMMENDATION

critical to this analysis. The more important consideration is the financial obligation the State has to replenish the fund.

Defendants further argue that any increased contribution required of the State would be made in the State's role as an employer, and does not create an obligation to satisfy adverse judgments. Defendants point to <u>Boatmen's First National Bank of Kansas City v. Kansas Public Retirement System</u>, 915 F. Supp. 131 (W.D. Mo. 1996), where the court considered whether Kansas's duty to make employer contributions to the public employee retirement system (KPERS) could be viewed as a legal obligation to help satisfy a judgment against KPERS. The court held that it was not, stating "[t]he mere possibility of having to pay for a judgment is simply not good enough." <u>Id.</u> at 138. The court does not find <u>Boatmen's</u> to be persuasive on this point. In <u>Ernst v. Rising</u>, 427 F.3d 351 (6th Cir. 2005), the Sixth Circuit held that the State-run retirement system that provided benefits for most of Michigan's State judges was an arm of the State. In so holding, the court noted that the rationale set forth in <u>Boatmen's</u>, that the *possibility* of having to pay a judgment is not sufficient, has since been rejected by the Supreme Court. <u>Id.</u> at 365 (citing <u>Doe</u>, 519 U.S. at 431). This court agrees with that analysis.

In <u>Ernst</u>, as here, the retirement fund was a stand alone fund that was not commingled with general State funds. On the first <u>Mitchell</u> factor, the <u>Ernst</u> court determined that the State of Michigan would be liable for any judgment against the retirement system that existing system funds could not satisfy because a Michigan statute mandated that "[t]he legislature shall annually appropriate to the retirement system the amount [of money needed]. . . to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed to adequately fund the retirement system for the previous fiscal year." <u>Id.</u> at 360 (quoting Mich. Comp. Laws §

38.2302(1)). In response to the plaintiff's argument that the State statute did not compel the State

treasury to pay a judgment obtained against the retirement system but compelled it only to fund

the system on an annual basis, the court stated, "plaintiffs fail to come to grips with the fiscal

reality that the State's funding requirements assuredly would increase if the retirement system

were to use its current and future funding to pay off a judgment against it." Id. at 362.

Oregon, as a contributing employer, is required to make contributions to OPERF that

OPERB determines to be actuarially necessary to fund the benefits to be provided:

> A participating public employer shall, at intervals designated by the
> Public Employees Retirement Board, transmit to the board those
> amounts the board determines to be actuarially necessary to
> adequately fund the benefits to be provided by the contributions of
> the employer under this chapter.

O.R.S. § 238.225 (1). If the system has liabilities to cover that exceed the funds available,

OPERB must set the amount that each employer contributes at a high enough rate to cover those

liabilities. Thus, while no statute mandates a direct appropriation from the legislature in the

event of a shortfall in OPERF, the State is obligated to pay contributions determined by OPERB

to be necessary to sufficiently fund the system, and those contributions do come out of State

funds.

In conclusion, this court concludes that the first factor favors Plaintiff's position, in that a

judgment against OPERF would impact State funds. While the Ninth circuit considers this to be

the most important factor in the arm of the State analysis, under the facts of this case, it is not,

standing alone, dispositive. Thus, the court will consider the remaining Mitchell factors.

## 2. Central Government Functions

The second Mitchell factor requires the court to consider whether the entity performs

central governmental functions. Mitchell, 861 F.2d at 201. The court must therefore evaluate whether OPERS addresses "a matter of statewide rather than local or municipal concern" and "the extent to which the State exercises centralized governmental control over the entity." Beentjes v. Placer County Air Pollution Control Dist., 397 F.3d 775, 782 (9th Cir. 2005) (citations omitted).

Here, the court finds that OPERS serves a statewide purpose. The Oregon legislature acknowledged such when it stated,

> The Legislative Assembly finds that the maintenance of a solid, affordable public employees retirement plan is essential to providing effective, efficient services to the citizens of Oregon by allowing the state and political subdivisions of the state to hire and retain employees who are committed to providing those services.

O.R.S. § 238.601. In McGinty v. New York, 251 F.3d 84 (2nd Cir. 2001), the Second Circuit held that the State-run retirement system "assists in the business of the State by enabling the State to meet its pension and benefits obligations, and immunity should accordingly be extended to the Retirement System." Id. at 98.

The fact that OPERS does not provide retirement benefits to all Oregon citizens does not change the fact that the overall purpose of OPERS is a statewide concern. In Ernst, the plaintiffs argued that the Michigan retirement system is more proprietary than governmental because it operates for the benefit of its members only, and not for the benefit of all State citizens. 427 F.3d at 365. The court disagreed, noting that even though the system does not provide benefits for all State citizens, "the system still serves a statewide purpose – providing retirement benefits for the judicial officers of the third branch of State government as well as other prominent statewide officials, all of whom indisputably serve the State." Id.

The court also finds that the State exercises sufficient control over OPERF such that it is more akin to a traditional State agency. OPERS is entirely a creature of statute, and is managed by officials who are either elected State officials or are appointed by the Governor and confirmed by the Senate. The State Treasurer acts as custodian of the funds, O.R.S. § 238.660(5), as well as the investment officer of the OIC, O.R.S. § 293.716, which is the body charged with investing OPERF assets, O.R.S. § 293.726. State statutes impose extensive requirements regarding the investment of OPERF assets. O.R.S. § 293.701 *et seq*. Even OPERB's management role is largely dictated by statute. For example, Oregon statutes direct the manner in which OPERB shall assess and collect contributions from public employers. O.R.S. § 238.225(1). The State also imposes requirements on OPERB for auditing the OPERS system and reporting to the Legislature. O.R.S. § 238.660(8). Thus, while OPERB is established as the governing authority of OPERF, both OPERB and OPERF and are ultimately subject to a extensive and detailed control by the State.

Given the substantial level of control exercised by the State and the fact that OPERS clearly serves a central government function, the court finds that this factor weighs heavily in favor of finding that OPERF is an arm of the State. In addition, given the overwhelming strength of this factor in this particular case, the court will give it significant weight in the overall analysis.

### 3. Sue and be sued

The third Mitchell factor requires the court to consider whether the entity may sue or be sued. Mitchell, 861 F.2d at 201. OPERB, the governing authority of the system, is authorized by statute to sue and be sued in its own name. O.R.S. § 238.630(2)(a). The State Treasurer is also

authorized to institute actions on behalf of OPERF:

> In the event of default in the payment of principal or interest or
> other income of any investment of the investment funds, the
> investment officer, with the approval of the Oregon Investment
> Council, may:
>
> > (a) Institute the proper proceedings to collect the matured
> > principal or interest or other income.

O.R.S. § 293.751. Plaintiff argues that this statute gives the Treasurer the power to sue on behalf of OPERF in this type of case; Defendants argue that the Treasurer's authority under O.R.S. § 293.751 is limited to suing in actions for default. There are no Oregon cases that specifically delineate the powers of the Treasurer to bring suit on behalf of OPERF. The court finds this factor to be of minimal value in evaluating whether OPERF is an arm of the State.

### 4. Hold property in its name

The fourth Mitchell factor requires the court to consider whether the entity has the power to take property in its own name or only the name of the State. Mitchell, 861 F.2d at 201. No statute specifically grants OPERB the right to hold property in its own name. The court must therefore look beyond to see how the powers and duties of managing OPERF have been allocated among the entities involved in the OPERS system.

OPERF is not part of the General Fund. O.R.S. § 238.660(1). It is a separate and distinct trust fund. Id. The State has no proprietary interest in the fund. O.R.S. § 238.660(3). Once a contribution by the State is made to OPERF, the State may not reclaim that contribution. Id.

OPERB is designated by statute as the trustee of OPERF. O.R.S. § 238.660(1). Accordingly, OPERB holds legal title to the assets in OPERF. 46 Or. Atty. Gen. Op. 8225 at 508. OPERB does not, however, have custody over the assets or authority to invest the assets.

Page 18 - FINDINGS AND RECOMMENDATION

Those powers are specifically assigned to the Treasurer and OIC. Specifically, the Treasurer is designated as the custodian of the fund, O.R.S. § 238.660(5), and is responsible for investing the assets of the fund according to the policies formulated by the OIC, O.R.S. § 293.736(1). The Treasurer is also granted authority to collect income from investment of OPERF assets and to take action necessary to protect OPERF assets, including instituting court proceedings to collect matured principal or interest or other income, disposing of matured assets that are under the Treasurer's control, and compromising or adjusting future payments. O.R.S § 293.751; 46 Or. Atty. Gen. Op. 8225 at 510.

In Eason, the court was asked to determine whether a Nevada school district was an arm of the State. 303 F.3d 1137. The court found that the board of trustees, which runs the school district and the schools within that district, holds, manages, and controls school district property. Id. at 1144 (citing Nev. Rev. Stat. §§ 393.010; 393.030). Further, the board of trustees was given custody of the schoolhouses, and the ability to insure the schoolhouses, furniture, and school apparatus. Id. (citing Nev. Rev. Stat. § 393.020). Finally, the board was authorized to sell, rent or lease real property belonging to the school district when it is "necessary or for the best interests of the school district." Id. (quoting Nev. Rev. Stat. § 393.220). Consequently, the court held that this Mitchell factor weighed against a finding that the school district was an arm of the State.

Here, by contrast, OPERB has legal title as trustee, but the custody and power to invest the assets, dispose of investments, and protect investments is given to the Treasurer. The court therefore finds that this factor militates in favor of finding that OPERF is an arm of the State.

### 5. Corporate Status

The final <u>Mitchell</u> factor requires the court to consider the corporate status of the entity. <u>Mitchell</u>, 861 F.2d at 201. Neither OPERF nor OPERB are separately incorporated. Defendants argue that while not incorporated, OPERB is granted the powers and privileges of a corporation, and that corporate status should be imputed to the underlying entity, OPERF. O.R.S. § 238.630(2)(a). Defendants cite to <u>Eason</u>, and <u>Holtz</u>, for support. In both cases the court was asked to determine whether a Nevada school district was an arm of the State. In <u>Eason</u>, the court found that while the school district itself was not incorporated, the board of trustees was. 303 F.3d at 1144 (citing Nev. Rev. Stat. §386.110[7]). The court therefore held that this factor weighed against a finding that the school district was an arm of the State. <u>Id.</u> Likewise, in <u>Holtz</u>, the court found that the home rule municipality, which was responsible for establishing, operating, and maintaining the school district, was defined as a municipal corporation by statute. 347 F.3d at 1188 (citing Alaska Stat. §29.04.010[8]). In addition, the Alaska Supreme Court had previously held "that a city school district is not a distinct entity, independent of a city. It depends for its existence upon the existence of the city. In fact, the school district and city are one and the same thing so far as corporate status is considered." <u>Id.</u> at 1188 (citing <u>Blue v. Stockton</u>, 355 P.2d 395 (Alaska 1960). Both <u>Eason</u> and <u>Holtz</u> are distinguished from the present case in that while OPERB has been granted the powers and privileges of a corporation, it does not have corporate

---

[7] Nev. Rev. Stat. §386.110(1) provides, "The trustees of a school district shall constitute a board, which is hereby created a body corporate"

[8] Alaska Stat. §29.04.010 provides, "A home rule municipality is a municipal corporation and political subdivision. It is a city or a borough that has adopted a home rule charter, or it is a unified municipality. A home rule municipality has all legislative powers not prohibited by law or charter."

status. In addition, this factor is not to be resolved simply by looking at whether the entity has corporate status or has been granted the powers and privileges of a corporation, but rather by looking at whether the entity operates like it is a separate corporation or subject to the control of the State. See e.g. Blake v. Kline, 612 F2d 718, 725 (3rd Cir. 1979) ("Although the [Public School Employees' Retirement Board] has not been separately incorporated, the Code indicates that it 'shall possess the power and privileges of a corporation.' Whether or not the Board does in fact operate like a separate corporation needs further examination on remand."). The court finds that OPERF and OPERB do not act like separate corporations, but in fact are subject to extensive control by the State of Oregon, as set forth above.

### 6. Conclusion

Based on consideration of all of the Mitchell factors and the overarching statutory scheme that establishes and controls OPERS, this court finds that OPERF is an arm of the State, performing an essential governmental function, rather than an entity, separate and apart from the State, which might be viewed as a citizen within the meaning of the diversity statute. In reaching this conclusion, the court finds support from other jurisdictions that have considered the question of whether a State retirement program is an arm of the state. See Ernst, 427 F.3d at 359 (holding that Michigan's retirement system for State-court judges is an arm of the State); McGinty, 251 F.3d at 100 (holding that the New York Retirement System is an arm of the State); Fitzpatrick v. Bitzer, 519 F2d 559, 561 (2nd Cir. 1975), rev'd on other grounds, 427 U.S. 445 (1976) (holding that the Connecticut State Employees' Retirement System is an arm of the State); JMB Group Trust IV v. Penn. Mun. Ret. Sys., 986 F. Supp. 534, 538 (N.D. Ill. 1997) (holding that the Pennsylvania Municipal Retirement System is an arm of the State where the duties and

responsibilities of the Retirement System are "totally defined and limited by the Commonwealth of Pennsylvania under the provisions of the Pennsylvania Code"); Sculthorpe v. Va. Ret. Sys., 952 F. Supp. 307, 309-10 (E.D. Va. 1997) (holding that the Virginia Retirement System is an arm of the State); Hair v. Tenn. Consol. Ret. Sys., 790 F. Supp. 1358, 1364 (M.D. Tenn. 1992) (holding that the Tennessee Consolidated Retirement System is an arm of the State); Mello v. Woodhouse, 755 F. Supp. 923, 930 (D. Nev. 1991) (holding that the Nevada Public Employees' Retirement Board is an arm of the State); Reiger v. Kan. Pub. Employees Ret. Sys., 755 F. Supp. 360, 361 (D. Kan. 1990) (holding that the Kansas Public Employees Retirement System is an arm of the State); Retired Pub. Employees' Ass'n of Cal., Chapter 22 v. California, 614 F. Supp. 571, 573, 581 (N.D. Cal. 1984) (holding "this Court is without jurisdiction to consider plaintiffs' . . . claim" against the "Public Employees Retirement System" of the State of California because "the Eleventh Amendment" bars claims "against the state and state officials and agencies"), rev'd on other grounds,799 F.2d 511 (9th Cir. 1986); United States v. South Carolina, 445 F. Supp. 1094, 1099-1100 (D.S.C. 1977) (holding that the South Carolina State Retirement System is an arm of the State); 21 Properties, Inc. v. Romney, 360 F. Supp. 1322, 1326 (N.D. Tex. 1973) (holding that the New York State Teachers' Retirement System is an arm of the State because the State would be required to increase its contributions to the retirement system to compensate for a judgment against it).

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (No. 4) should be GRANTED
and this action should be remanded to State court.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District
Judge for review. Objections, if any, are due January 20, 2006. If no objections are filed, review
of the Findings and Recommendation will go under advisement on that date. If objections are
filed, a response to the objections is due fourteen days after the date the objections are filed and
the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 6th day of January, 2006.

Honorable Paul Papak
U.S. Magistrate Judge